[No. A114467. First Dist., Div. Five. Aug. 13, 2007.]

LARRY TOTTEN et al., Plaintiffs and Appellants, v.
JEANNE L. HILL, Defendant and Respondent.

**COUNSEL**

Stanton, Kay & Watson and Anne M. Bevington for Plaintiffs and Appellants.

Halkides, Morgan & Kelley and John P. Kelley for Defendant and Respondent.

OPINION

**SIMONS, J.**—The Laborers Health and Welfare Trust Fund for Northern California (Trust Fund)[1] is an employee health and welfare benefit plan (Plan) subject to the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.) (ERISA). In 2003, it paid out $167,767 in benefits for medical expenses incurred by one of its participants, defendant and respondent Jeanne L. Hill (Hill), who had suffered a punctured bowel during surgery. In 2004, Hill received a $230,000 settlement in the medical malpractice lawsuit she filed against her doctor for his alleged negligence. Upon learning of the settlement, the Trustees attempted to obtain reimbursement for the medical expenses paid by the Trust Fund pursuant to the terms of the Plan, but Hill refused. The Trustees then filed a breach of contract claim in state court alleging Hill's failure to abide by the terms of the Plan. The trial court granted summary judgment in favor of Hill, and the Trustees appeal.

Preliminarily, we must decide whether the trial court had subject matter jurisdiction to hear this claim. This, in turn, requires us to determine whether an ERISA fiduciary may sue in either state or federal court for reimbursement of benefits paid to a plan participant or beneficiary who recovers personal injury damages from a third party tortfeasor. We conclude the Trustees had a federal ERISA claim for reimbursement over which the federal courts exercise exclusive subject matter jurisdiction. Further, state courts not only lack concurrent jurisdiction over ERISA claims for reimbursement, but their jurisdiction over state law claims is displaced by ERISA. As a consequence, we order the judgment vacated and the complaint dismissed.

## BACKGROUND

In December 2003, Hill filed a medical malpractice lawsuit in Shasta County Superior Court alleging that her doctor had negligently performed surgery on her on December 10, 2002. In December 2004, Hill settled this claim for $230,000, a figure that represented compensation for pain and suffering and lost wages.[2]

At the time of the alleged malpractice, Hill was a nurse at Mercy Medical Center in Redding. Her labor union had contracted with the Trust Fund to

---

[1] Plaintiffs and appellants are Larry Totten as chairman and Jose Moreno as cochairman of the board of trustees for the Laborers Health and Welfare Trust Fund for Northern California (collectively, Trustees).

[2] Hill's settlement demand initially included $250,000 for pain and suffering, $31,830 in lost wages, and an additional sum for medical bills. However, the parties' attorneys concluded the medical bills did not have to be repaid out of any settlement proceeds, and agreed the ultimate settlement figure represented only compensation for pain and suffering and lost wages.

provide health and welfare benefits to the employees of Mercy Medical Center, and Hill was a participant in the Plan. Hill claimed $397,626.07 in medical bills related to the malpractice, and the Trust Fund paid $167,767 in benefits.[3] The Plan is self-funded and does not provide benefits through insurance. Under its terms, when benefits are paid due to an illness, injury, or other condition for which a third party is responsible, the Trust Fund has an automatic lien on any recovery the participant receives for benefits paid by the Trust Fund as a result of such illness, injury, or condition.[4]

Upon learning of Hill's medical malpractice claim, the Trustees sent Hill a request to sign a reimbursement agreement. Hill did not return this agreement and did not reimburse the Trust Fund for the amounts paid on her behalf.

On March 7, 2005, the Trustees filed an action against Hill in San Francisco Superior Court for breach of contract. Hill demurred to the complaint on the ground that the Trustees' action was preempted by ERISA and subject matter jurisdiction was exclusive in federal court. The Trustees argued the case was not related to ERISA and, therefore, it could proceed in state court and under state law. The trial court overruled Hill's demurrer, finding the cause of action did not relate to the Plan and the state court had subject matter jurisdiction.

Hill then filed a motion for summary judgment and argued that Civil Code section 3333.1 of the Medical Injury Compensation Reform Act of 1975 (MICRA) applied to her malpractice settlement and precluded the Trustees' action seeking reimbursement from Hill's settlement proceeds.[5] The Trustees took the position that MICRA was preempted by ERISA, and thus the claim

---

[3] In March or April 2003, the nurses' union canceled the contract with the Trust Fund and switched the nurses' health care benefits to Blue Cross, and Blue Cross paid Hill's remaining medical expenses.

[4] Section 8 of the Plan provides, in relevant part, "If an Eligible Individual has an illness, injury, disease, or other condition for which a third party may be liable or legally responsible by reason of an act or omission, or insurance coverage of that third party, the Fund will have an automatic lien upon any recovery against the third party for benefits paid by the Fund as a result of that illness, injury, disease or other condition. All Eligible Individuals, as a condition precedent to entitlement to benefits from the Fund, must agree in writing to reimburse the Fund for any payments made by the Fund on account of hospital, medical or other expenses in connection with, or arising out of, that injury, illness, disease or other condition. The reimbursement will be made out of any proceeds received by way of judgement, arbitration award, settlement or otherwise in connection with, or arising out of, any claim for or right to damages by the Eligible Individual against the third party . . . ."

[5] In relevant part, Civil Code section 3333.1 provides, "(a) In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability

was not barred. The Trustees moved for judgment on the pleadings as to Hill's affirmative defenses based on lack of state court subject matter jurisdiction and MICRA. The trial court reaffirmed its previous jurisdictional finding and granted the Trustees' motion as to Hill's affirmative defense contesting the court's subject matter jurisdiction. In addition, the trial court concluded that because the Trustees' breach of contract cause of action did not "relate to" ERISA, ERISA could not be used to defeat Hill's MICRA defense. The court granted Hill's motion for summary judgment, and entered judgment in favor of Hill. The Trustees now appeal from that judgment.

## DISCUSSION

### I. *Hill May Raise the Issue of Subject Matter Jurisdiction*

In the proceedings below, Hill demurred to the Trustees' complaint on the ground that the Trustees' breach of contract cause of action was preempted by ERISA, and the state court had no subject matter jurisdiction. The trial court overruled Hill's demurrer, but subsequently granted Hill's motion for summary judgment and entered judgment in favor of Hill.

■ In their opening brief, the Trustees challenge the grant of summary judgment and the entry of judgment in favor of Hill. In her opposition brief, Hill first asserts a lack of subject matter jurisdiction and then addresses the substance of the Trustees' argument regarding summary judgment. In their reply, the Trustees argue the jurisdictional claim was procedurally barred because, as a nonappealing respondent, Hill cannot raise claims of error except to show any error claimed by the Trustees was harmless. We conclude subject matter jurisdiction may properly be challenged.

"Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.]" (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942].) "The adequacy of the court's subject matter jurisdiction must be addressed whenever that issue comes to the court's attention." (*Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 896 [76 Cal.Rptr.2d 827].)

coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the cost of medical, hospital, dental, or other health care services. Where the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence. [¶] (b) *No source of collateral benefits introduced pursuant to subdivision (a) shall recover any amount against the plaintiff* nor shall it be subrogated to the rights of the plaintiff against a defendant." (Italics added.)

*Chromy v. Lawrance* (1991) 233 Cal.App.3d 1521 [285 Cal.Rptr. 400] is instructive. In *Chromy*, the defendants filed a demurrer challenging the court's subject matter jurisdiction, which the trial court overruled. The defendants did not seek relief by way of a writ, and a jury trial followed, resulting in a defense verdict. The plaintiff appealed and challenged the verdict on several grounds, but neither party discussed subject matter jurisdiction on appeal. (*Id.* at p. 1524.) The Court of Appeal raised the issue sua sponte, found a lack of subject matter jurisdiction, vacated the judgment and ordered the trial court to dismiss the action. As the court explained " '[w]here a court is wholly lacking in jurisdiction of the subject matter of an action, jurisdiction may not be conferred by consent, waiver, agreement, acquiescence or estoppel.' " (*Id.* at p. 1524.) We agree with that analysis and conclude Hill may raise her jurisdictional challenge.

## II. *ERISA Provides for Exclusive Federal Jurisdiction over the Trustees' Federal Claims*

Section 1132 of title 29 of the United States Code[6] provides for methods of civil enforcement under ERISA. Section 1132(a)(1)(B) provides "A civil action may be brought—[¶] (1) by a participant or beneficiary—[¶] . . . [¶] (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Section 1132(e)(1) provides for jurisdiction: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) . . . . State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section."

Pursuant to these provisions, the Trustees, as fiduciaries of the Plan, could have sought relief under section 1132(a)(3) in federal court for reimbursement of Hill's medical expenses paid for by the Plan. (*Jefferson-Pilot Life Ins. Co. v. Krafka* (1996) 50 Cal.App.4th 190, 195 [57 Cal.Rptr.2d 723] (*Krafka*).) The Trustees rely on *Providence Health Plan v. McDowell* (9th Cir. 2004)

---

[6] All undesignated statutory references are to title 29 of the United States Code.

385 F.3d 1168 to argue *Krafka* was wrongly decided and section 1132(a)(3) does not provide the Plan a cause of action in federal court. In *McDowell*, as here, a health plan sued in state court for reimbursement of benefits paid. The Ninth Circuit found this breach of contract cause of action for reimbursement was not removable to federal court because it did not fall within ERISA's civil enforcement scheme. "As a fiduciary to the plan, Providence's only vehicle for relief in addressing violations or seeking enforcement of a plan is [section] 1132(a)(3). However, that section allows a fiduciary to seek only equitable relief for violation of the plan. Here, Providence is seeking ordinary damages—monetary relief—based upon contractual remedies that arise under state law. Therefore, its claim is not within ERISA's civil enforcement provisions. [Citation.]" (*McDowell*, at pp. 1172–1173.) *McDowell* interpreted *Great-West Life & Annuity Ins. Co. v. Knudson* (2002) 534 U.S. 204 [151 L.Ed.2d 635, 122 S.Ct. 708] (*Knudson*) to hold that section 1132(a)(3) "did not authorize a fiduciary to enforce a reimbursement provision" in federal court, and, therefore, a claim for monetary relief based on contractual remedies arising under state law was not within ERISA's enforcement provisions. (*McDowell*, at p. 1173.)

In *Sereboff v. Mid Atlantic Medical Services, Inc.* (2006) 547 U.S. 356 [164 L.Ed.2d 612, 126 S.Ct. 1869] (*Sereboff*), the United States Supreme Court clarified and limited its holding in *Knudson*. *Sereboff* considered the circumstances under which an ERISA fiduciary may file a federal suit for reimbursement of medical expenses paid by the ERISA plan, when the beneficiaries recovered for their injuries from a third party. In *Sereboff*, the beneficiaries of a health plan covered by ERISA suffered injuries in an automobile accident, and the plan paid the medical expenses. (*Sereboff*, 547 U.S. at pp. 359–360 [126 S.Ct. at p. 1872].) The beneficiaries commenced a tort action in state court against several third parties seeking compensatory damages for their injuries, and eventually settled the claim. (*Id.* at pp. 359–362 [126 S.Ct. at pp. 1872–1873].) While the tort suit was pending, the plan sent the beneficiaries letters asserting its right to a lien on a portion of any recovery; however, after settling their tort claim and receiving their settlement proceeds, the beneficiaries did not reimburse the plan. The plan fiduciary brought suit against the beneficiaries in federal district court under section 1132(a)(3), seeking to collect the medical expenses it paid on behalf of the beneficiaries. The fiduciary sought a temporary restraining order and preliminary injunction requiring the beneficiaries to set aside the amount at issue, and the district court approved a stipulation by the parties requiring the beneficiaries to do so until the court ruled on the merits. The district court subsequently ruled in favor of the plan fiduciary and ordered the beneficiaries to reimburse the plan with interest. (*Sereboff*, 547 U.S. at pp. 360–362 [126 S.Ct. at p. 1873].) The Supreme Court affirmed the judgment, finding that the plan

fiduciary's action properly sought " 'equitable relief' " under section 1132(a)(3). (*Sereboff*, 547 U.S. at p. 369 [126 S.Ct. at p. 1878].)

██ In reaching its conclusion, the Supreme Court explained the focus of the inquiry was whether the relief requested by the plan fiduciary was "equitable" under section 1132(a)(3)(B). (*Sereboff, supra*, 547 U.S. at p. 361 [126 S.Ct. at p. 1873].) The plan fiduciary "sought 'specifically identifiable' funds that were 'within the possession and control of the [beneficiaries].' " (*Id.* at pp. 362–363 [126 S.Ct. at p. 1874].) The court stated, "ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable." (*Sereboff*, 547 U.S. at p. 363 [126 S.Ct. at p. 1874].) The court found the basis of the plan fiduciary's claim was equitable because the reimbursement provision in the plan "specifically identified a particular fund, distinct from the [beneficiaries'] general assets—'[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)'—and a particular share of that fund to which [the plan] was entitled—'that portion of the total recovery which is due [the plan] for benefits paid.' " (*Id.* at p. 364 [126 S.Ct. at p. 1875].) The plan fiduciary could therefore "rely on a 'familiar rul[e] of equity' to collect for the medical bills it had paid on the [beneficiaries'] behalf" and " 'follow' a portion of the recovery 'into the [beneficiaries'] hands' 'as soon as [the settlement fund] was identified,' and impose on that portion a constructive trust or equitable lien." (*Ibid.*) The court summarized, "[The plan fiduciary's] action to enforce the [reimbursement] provision qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement." (*Id.* at p. 368 [126 S.Ct. at p. 1877].)

*Sereboff* distinguished its previous holding in *Knudson* stating, "Great-West claimed a right to recover in restitution, and the Court concluded only that equitable restitution was unavailable because the funds sought were not in Knudson's possession" (*Sereboff, supra*, 547 U.S. at p. 365 [126 S.Ct. at p. 1876]), "but had instead been placed in a 'Special Needs Trust' under California law" (*id.* at p. 362 [126 S.Ct. at p. 1874]). Thus, under *Sereboff*, a plan fiduciary may enforce its reimbursement provisions by seeking equitable relief in federal courts. In this case, although the Trustees chose not to follow the steps taken by the plan fiduciary in *Sereboff*, they could have sought reimbursement under section 1132(a)(3).

██ Moreover, section 1132(e) clearly provides that federal jurisdiction over an ERISA plan's ERISA claim is exclusive. As *Krafka* explained, "the federal courts have exclusive subject matter jurisdiction of civil lawsuits under ERISA, except for actions under . . . section 1132(a)(1)(B) and (a)(7); state courts have concurrent jurisdiction in matters arising under those

subdivisions. Section 1132(a)(1)(B) and (a)(7) authorizes actions, respectively: 'by a participant or beneficiary . . . [¶] . . . [¶] to recover benefits . . .' and 'by a State to enforce compliance . . . .' [The p]laintiff is not a plan participant or beneficiary, nor is it a state. Therefore, [the] plaintiff is not a proper party to bring an action in state court under ERISA, section 1132(a)(1)(B) or (a)(7). In other words, any action [the] plaintiff may be able to bring under ERISA is not a lawsuit as to which this court can exercise concurrent subject matter jurisdiction." (*Krafka, supra,* 50 Cal.App.4th at pp. 194–195.)

### III. *ERISA Ousts State Courts of Subject Matter Jurisdiction over the Trustees' State Claims*

The Trustees have filed state law breach of contract claims, not ERISA claims. Thus, section 1132(e)(1), which allocates state and federal court jurisdiction over ERISA claims, does not determine whether a state court has jurisdiction over these state law claims. We conclude, however, that the "complete preemption" doctrine compels the displacement of state court subject matter jurisdiction over the Trustees' claims.

#### A. *The Complete Preemption Doctrine*

■ Despite the similarity in nomenclature, complete preemption is quite distinct from ordinary preemption. As explained in Professor Moore's treatise on federal jurisdiction, " 'Ordinary preemption' is an affirmative defense to the allegations in a plaintiff's complaint asserting a state law claim claiming that a state law conflicts with, and is overridden by, a federal law. On the other hand, complete preemption does not constitute a defense at all. Rather, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is actually and entirely a matter of federal law, even if the state law would provide a cause of action in the absence of the federal law." (1 Moore's Manual: Federal Practice and Procedure (2007) § 5.13[3][b], p. 5-27, fns. omitted; see *Balcorta v. Twentieth Century-Fox Film Corp.* (9th Cir. 2000) 208 F.3d 1102, 1107.)

■ In *Metropolitan Life Ins. Co. v. Taylor* (1987) 481 U.S. 58 [95 L.Ed.2d 55, 107 S.Ct. 1542], the United States Supreme Court placed complete preemption in its doctrinal context. "By statute 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.' [Citation.] One category of cases over which the district courts have original jurisdiction are 'federal question'

cases; that is, those cases 'arising under the Constitution, laws, or treaties of the United States.' [Citation.] It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law. [Citations.] The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts. [Citation.] [¶] Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. [Citation.] One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by [section] 301 of the [Labor Management Relations Act, 1947] for such special treatment. [Citation.] [¶] 'The necessary ground of decision [in *Avco Corp. v. Aero Lodge 735* (1968) 390 U.S. 557 [20 L.Ed.2d 126, 88 S.Ct. 1235]] was that the pre-emptive force of [section] 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [section] 301.' [Citation.]" (*Metropolitan Life*, at pp. 63–64.)

### B.  *The Trustees' State Law Claim Is Completely Preempted*

In *Metropolitan Life,* the high court extended the complete preemption doctrine in *Avco v. Aero Lodge 735, supra,* 390 U.S. 557 to permit the removal of state law claims by ERISA participants asserting the improper processing of benefit claims under an ERISA plan. (*Metropolitan Life Ins. Co. v. Taylor, supra,* 481 U.S. at pp. 64–67.) "Thus, a state claim may be removed to federal court . . . when a federal statute wholly displaces the state-law cause of action through complete pre-emption. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under [title 28 of the United States Code section] 1441(b), which authorizes any claim that 'arises under' federal law to be removed to federal court. In the two categories of cases where this Court has found complete pre-emption—certain causes of action under the [Labor Management Relations Act of 1947] and ERISA—the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action. [Citations.]" (*Beneficial Nat. Bank v. Anderson* (2003) 539 U.S. 1, 8 [156 L.Ed.2d 1, 123 S.Ct. 2058], fns. omitted.)

Though a product of federal removal law, the complete preemption doctrine effectively divests state courts of subject matter jurisdiction over those

state law claims to which it applies. (*Reeds v. Walker* (2006) 2006 OK 43 & fn. 34 [157 P.3d 100, 109].) Thus, it governs the issue we face: Does a state court have subject matter jurisdiction over a state law claim by an ERISA plan for the reimbursement of benefits paid? Resolution of this issue depends upon whether *Metropolitan Life*'s application of complete preemption to state claims by plan participants should be extended to state claims by plan fiduciaries. In *Knudson,* the high court specifically reserved this question. (*Knudson, supra,* 534 U.S. at p. 220.)

The Trustees argue against the extension of complete preemption to fiduciary claims, because ERISA provides far broader relief to participants than to fiduciaries. But it seems illogical to argue that Congress's decision to provide fewer remedies to plan fiduciaries should be implemented by providing them with additional state court remedies unavailable to participants and beneficiaries. Moreover, adopting the Trustees' argument would undermine the effort to achieve uniformity in enforcement, a central goal of ERISA often emphasized by the high court.

"ERISA is a ' "comprehensive and reticulated statute," the product of a decade of congressional study of the Nation's private employee benefit system.' [Citation.] We have therefore been especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text. [Citation.]" (*Knudson, supra,* 534 U.S. at p. 209.) " 'The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in [section 1132(a)] as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." ' [Citation.]" (*Ingersoll-Rand Co. v. McClendon* (1990) 498 U.S. 133, 144 [112 L.Ed.2d 474, 111 S.Ct. 478]; accord, *Aetna Health Inc. v. Davila* (2004) 542 U.S. 200, 208–209 [159 L.Ed.2d 312, 124 S.Ct. 2488].) One of those six "enforcement provisions" relates to a plan fiduciary's remedy in federal court.

Finally, the court in *Metropolitan Life* was persuaded to expand the complete preemption doctrine from the LMRA (Labor Management Relations Act, 1947) (29 U.S.C. § 141 et seq.) to state law claims by ERISA participants and beneficiaries because "the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of [section] 301 of the LMRA. Section [1132(f)] says: [¶] 'The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a)

of this section in any action.' " (*Metropolitan Life Ins. Co. v. Taylor, supra,* 481 U.S. at p. 65.) Section 1132(f) expressly refers to all of section 1132(a), and, so, the reasoning of *Metropolitan Life* would seem to apply to the enforcement rights of fiduciaries as well as participants and beneficiaries.

■ Though it arose in a different factual context, *Romney v. Lin* (2d Cir. 1996) 94 F.3d 74 provides additional support for our conclusion that a plan fiduciary's right to relief under section 1132(a)(3) completely preempts a state law claim for the same relief. In *Romney,* a union sued the principal shareholders of a corporation in New York state court, under a New York statute, to collect unpaid contributions owed to several ERISA benefit funds. The shareholders removed the action to federal district court, and that court refused to remand to state court. (*Romney,* at p. 77.) The Second Circuit affirmed, concluding that (1) section 1145 requires employers obligated to make payments to an ERISA benefit plan to actually make the payments; and (2) section 1132(a)(3) permits a plan fiduciary to enforce this obligation. (*Romney,* at p. 81.) *Romney* then determined that the New York state remedy imposing direct liability on shareholders supplemented the remedies provided by ERISA and, under *Metropolitan Life,* was completely preempted. (*Romney,* at p. 81.) Thus, *Romney* applied the complete preemption doctrine to displace state court jurisdiction over a state law claim by a union because a federal remedy for the alleged wrongdoing was available to a plan fiduciary under section 1132(a)(3).

■ The Trustees rely on *Reeds v. Walker, supra,* 157 P.3d 100 to argue that because the complaint is styled as a claim for legal but not equitable relief, the claim is not authorized by section 1132(a)(3), which limits fiduciaries to equitable relief. *Reeds* ruled, "with federal jurisdiction uncertain we decline to abdicate Oklahoma's cognizance over this state-law cause of action." (*Reeds,* at p. 111.) With respect, we disagree with *Reeds* and the Trustees. Under *Sereboff,* the Trustees could have pursued their reimbursement claim in federal court under section 1132(a)(3).[7] We are unwilling to invest the fiduciaries of an ERISA plan with the power to select either a state or federal forum depending upon the plan's interest in a particular case through artful pleading. "Complete preemption would be an empty doctrine if a plaintiff could plead his way into state court by seeking only money damages." (*Wood v. Prudential Ins. Co. of America* (3d Cir. 2000) 207 F.3d 674, 679.) Allowing the Trustees' breach of contract cause of action, which arises entirely from the terms of the ERISA plan, to proceed in state court

---

[7] Whether or not the Trustees' claim could currently be filed in federal court does not affect our analysis. "The inability to remove this action to the federal district court, if that is the law, does not confer subject matter jurisdiction on the state courts." (*Krafka, supra,* 50 Cal.App.4th at p. 197 [finding the state court lacked subject matter jurisdiction regardless of the fact that the time in which to seek removal of the action to the federal district court had long since passed].)

would impermissibly supplement the ERISA civil enforcement scheme and seriously undermine the goal of uniformity promoted by it. Because this state law cause of action is completely preempted, the trial court lacked subject matter jurisdiction.[8]

## DISPOSITION

We vacate the judgment and order the action dismissed. Costs to Hill.

Jones, P. J., and Gemello, J., concurred.

---

[8] We express no view on a situation where a breach of contract claim by a plan fiduciary arises independently of ERISA or the terms of the employee benefit plan. (See *Carpenters Health & Welfare Trust Fund v. McCracken* (2000) 83 Cal.App.4th 1365 [100 Cal.Rptr.2d 473] [finding an employee benefit trust fund's state breach of contract action was not preempted by ERISA where the claim was based on a breach of the terms of a settlement agreement made after previous ERISA-related litigation].) Here, the Trustees' suit did not attempt to remedy a violation of a contract independent of the ERISA plan or its terms.