**ASBESTOS WORKERS LOCAL UNION NO. 42 WELFARE FUND,**
Plaintiff Below–Appellant,

v.

**Thomas L. BREWSTER, Sr., Candace L. Brewster, and Charles Snyderman, Esq., Defendants Below–Appellees.**

No. 568, 2006.

Supreme Court of Delaware.

Submitted: Aug. 22, 2007.
Decided: Nov. 21, 2007.

**33.** *Id.* at 1225.

Claiborne S. Newlin, Esquire, of Meranze and Katz, P.C., Wilmington, Delaware and David A. Gaudioso, Esquire (argued), of Meranze and Katz, P.C., Philadelphia, Pennsylvania, for Appellant.

Charles Snyderman, Esquire, of Charles Snyderman, P.A., Wilmington, Delaware, for Appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en banc.

RIDGELY, Justice.

This appeal arises from a subrogation action brought by Appellant Asbestos Workers Local No. 42 Welfare Fund (the "Fund") against Appellees Thomas L. Brewster, Sr., Candace L. Brewster, and Charles Snyderman, Esquire. The Fund was established under the Employment Retirement Income Security Act of 1974 (ERISA)[1] for the benefit of the members of Asbestos Workers Local No. 42 ("Local 42") and their dependents. It operates pursuant to a Summary Plan Description (the "Plan") and the provisions of ERISA. Mr. Brewster is a member of Local 42 and Mrs. Brewster qualifies as his dependent. Mrs. Brewster was injured in an automobile accident and sought to have her medical expenses paid by the Fund. Mr. Snyderman, who was their counsel, also achieved third-party settlements from the

---

1. As amended, 29 U.S.C. §§ 1001–1461 (2005).

tortfeasor and from the Brewsters' automobile insurance company.

The Plan expressly required repayment of benefits from any money received from a third party for expenses paid by the Fund. The Fund paid Mrs. Brewster's medical expenses, after she signed a subrogation agreement (as required by the Plan) promising to repay to the Fund an amount equal to the benefits she received from the Fund. The Brewsters through their counsel, Mr. Snyderman, recovered the same medical expenses from a third party settlement, but did not repay the Fund after being requested to do so.

The Fund filed suit under ERISA in the United States District Court for the District of Delaware seeking a declaration of its subrogation rights and a constructive trust over the settlement proceeds. The Fund's complaint was dismissed by the U.S. District Court for lack of subject matter jurisdiction over the claim under ERISA. The Fund did not appeal that ruling. A second lawsuit brought by the Fund in the Court of Chancery was also dismissed for lack of jurisdiction. The Court of Chancery transferred the case to the Superior Court, which granted summary judgment in favor of the Brewsters and Mr. Snyderman after concluding that the Fund's claim was preempted by federal law.

█ We hold that the Fund's state law claim is preempted by § 514 of ERISA because that claim "relates to" the Plan. The Fund's claim also duplicates or supplements a civil enforcement remedy available to the Fund under § 502(a)(3) of ERISA.[2] Because there is federal jurisdictional preemption of the Fund's subro-

gation claim in this case, we affirm the judgment of the Superior Court.

## I.

The Fund is a multiemployer employee benefit plan (the "Plan") as defined by 29 U.S.C. § 1002(37)(A) of ERISA. The Fund was established for the benefit of the members of Local 42 and operates pursuant to both the Plan and the provisions of ERISA. Mr. Brewster is a member of Local 42 and a "participant" under the Plan. Mrs. Brewster is a dependent of a "plan participant" as defined by the Plan and 29 U.S.C. § 1002(8).

The Plan gave express subrogation rights to the Fund. Specifically, it provided:

> When injury or injuries and/or death (for which any benefits would otherwise be payable under this) are caused under circumstances which create a legal liability with some other person or party, any payment made by the Plan to or on behalf of the participant shall be considered an advance only, and acceptance by the participant, dependent or provider shall constitute their agreement to repay the payments to the Plan in the event a recovery is made from the other person or party. In addition, the Fund shall be entitled to recover its lien directly from the third party.

> Subrogation means that the Fund can regain, by legal action if necessary, benefits paid by it to the participant or that person's insurance company or other plan or from the participant or the parties responsible for the injury. . . .

> Under the Plan's subrogation provision, a participant has the following obli-

---

**2.** In 2006, the U.S. Supreme Court held in *Sereboff v. Mid Atlantic Medical Services, Inc.,* 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), that a plan fiduciary may obtain reimbursement of benefits paid from settle-

ment proceeds from a third party, through an action brought under ERISA to impose a constructive trust or an equitable lien. Thus, the Fund had an equitable remedy under ERISA to enforce its subrogation claim.

gations in order to be entitled to receive the advance which is provided under this Section:

1. To sign the Standard Subrogation Agreement of the Plan and to take such action and cooperate with Plan representatives as may be necessary or appropriate to recover from any third party, as damages those payments made by the Plan. (Even if, however, a participant fails to sign the Standard Subrogation Agreement, she/he will still be responsible to repay the Plan in the event of a recovery.)
2. To immediately pay to the Plan any money recovered from third persons for expenses paid by the Plan.
3. To not do anything to impair, prejudice or discharge the Plan's right of subrogation.
4. To assign to the Plan the right to bring an action against any third party responsible for the injuries sustained if the Participant fails to bring such action....

The Plan can withhold future benefits to a Participant for failure to comply with these rules.

In 1996, Mrs. Brewster sustained extensive injuries in an automobile accident. Mr. Brewster applied to the Fund for payment of her medical bills. As a precondition for payment, Mrs. Brewster signed the standard subrogation agreement, contemplated by the Plan, entitled "Asbestos Workers Union Local 42 Welfare Fund Subrogation Agreement" (the "Agreement"). Under the Agreement, Mrs. Brewster assigned to the Fund benefits paid or payable with respect to the same injury in an amount equal to the benefits received by her from the Fund.[3] After Mrs. Brewster completed the form, the Fund paid medical expenses of $42,852.44 relating to Mrs. Brewster's accident.

In 1998, Mr. Snyderman, on behalf of the Brewsters, settled their claim against the driver of the other vehicle involved in the accident for $15,000—the limit of the other driver's insurance policy. Mr. Snyderman also negotiated and settled an underinsured motorist claim against the Brewster's own automobile insurance company for $100,000. Mr. Snyderman notified the Fund of the settlements and requested that the Fund provide him with the amount of its subrogation claim.

The Fund requested that the Brewsters reimburse all monies it paid to or on behalf of Mrs. Brewster under the Agreement. In response, Mr. Snyderman questioned the Fund's ability to enforce the Agreement. Sometime thereafter, he distributed $30,000 to the Brewsters and deducted one-third of the $115,000 for his attorneys' fees and related expenses. According to the Fund, Mr. Snyderman put the remainder in escrow to reimburse the Fund, but then later distributed that amount to the Brewsters as well.

In 2001, the Fund filed a Complaint for Declaratory Judgment in the United

---

**3.** The relevant provisions of the Agreement state:

> If the Fund pays any hospital, surgical-medical, accident and sickness, or other benefits for which you recover damages from an insurance company or other party (for example, as the result of an accident and a suit for damages), then the Fund must be reimbursed the amount of the benefits it has paid.

> In consideration of the payment to me at this time for medical expenses incurred or weekly accident and sickness benefits paid following the injuries above noted, should any benefits be paid or payable to me under any workman's award, settlement, compromise or judgment with respect to the same injury, then I do hereby assign to Local Union No. 42 Welfare Fund an amount equal to those benefits received by me from the Fund.

States District Court for the District of Delaware under § 502(a)(3) of ERISA,[4] seeking a declaration of its subrogation rights and an equitable lien and constructive trust over the Brewsters' settlement proceeds. The Fund filed a parallel action in the Court of Chancery, which was stayed pending the outcome of the federal action. The District Court dismissed the federal action in reliance upon *Great–West Life & Annuity Insurance Co. v. Knudson*,[5] concluding that it did not have subject matter jurisdiction under § 502(a)(3) of ERISA because that section authorized only equitable remedies. The District Court reasoned that the Fund was trying to recharacterize an effort to recover a money judgment against the Brewsters, which *Great–West* had classified as a legal remedy.[6]

Thereafter, the Court of Chancery dismissed the parallel action for lack of equi-table jurisdiction.[7] The case was then transferred to Superior Court pursuant to 10 *Del. C.* § 1902.[8] In the Superior Court, the parties filed cross motions for summary judgment. The Superior Court granted summary judgment in favor of the Brewsters and denied the Fund's cross motion, concluding that, as a matter of law, the Fund's claim "relates to" an ERISA employee benefit plan under § 514(a) of ERISA.[9] In reaching this conclusion, the Superior Court stated that the Fund "appears to be without a legal mechanism thru [sic] which to obtain reimbursement of the monies paid to or on behalf of Mrs. Brewster."[10] This appeal followed.

## II.

The Fund argues that there is no federal preemption of its state law subrogation claim. Specifically, it contends that the Superior Court erred as a matter of

---

4. Codified at 29 U.S.C. § 1132(a)(3). The Fund also brought suit under § 502(a)(2) of ERISA.

5. 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). In *Great–West*, the U.S. Supreme Court held that § 502(a)(3) of ERISA provides federal jurisdiction only for equitable relief and does not authorize jurisdiction over lawsuits seeking a legal remedy, such as the imposition of personal liability for a contractual obligation to pay money. *Id.* at 221, 122 S.Ct. 708.

6. *Asbestos Workers Local No. 42 Welfare Fund v. Brewster*, 227 F.Supp.2d 226, 228 (D.Del. 2002). The court also found that neither the Brewsters nor Snyderman were fiduciaries within the meaning of 29 U.S.C. § 1109, which would also deny the federal courts jurisdiction under § 502(a)(2). *Id.*

7. Specifically, the Court of Chancery concluded that "[a]lthough the complaint states that this is an action for declaratory judgment, breach of contract and breach of fiduciary duty, it is clear that the Fund seeks to enforce its contractual subrogation claim." It found that the Fund's claim was "a garden-variety breach of contract claim for which money damages is the sole form of relief to be awarded." *Asbestos Workers Local No. 42 Welfare Fund v. Brewster*, 2004 WL 1488681, at *1 (Del.Ch.).

8. 10 *Del. C.* § 1902 provides, in pertinent part:

 No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination....

9. Codified at 29 U.S.C. § 1144(a): "Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 4(a) [29 USCS § 1003(a)] and not exempt under section 4(b) [29 USCS § 1003(b)]." (emphasis added).

10. *Asbestos Workers Local No. 42 Welfare Fund v. Brewster*, 2006 WL 3393587, at *5 (Del.Super.).

law and misinterpreted the term "relates to" within § 514 of ERISA. It also argues that the Superior Court erred as a matter of law by holding (as had the District Court) that the litigation was not an equitable action under § 502(a)(3), yet finding that the Fund's action could still be preempted by § 514 of ERISA. We review a grant of summary judgment *de novo*.[11] Issues of subject matter jurisdiction involve questions of law that are also reviewed *de novo*.[12]

### A.

The Brewsters argue that the Fund's claim is completely preempted by ERISA. *Moore's Manual on Federal Practice and Procedure* aptly summarizes the variety of categories that have been used to describe preemption:

> Complete preemption applies only in the extremely limited circumstance that Congress intends in a particular area to supersede both the substantive and remedial provisions of state law and create a federal remedy for violation of the law that is exclusive, even when a claimant attempts to rely entirely on state law in state court. To date, the Supreme Court has found only three federal statutes to have this broad preemptive scope: the Labor Management Relations Act, the Employee Retirement Income and Security Act, and the National Bank Act for claims of usury against national banks.

> Some courts have noted that the label of this exception is not entirely accurate, because the doctrine is not one of preemption, but rather one of federal jurisdiction. Furthermore, removal and preemption are two distinct concepts, and

the fact that a claim may be preempted does not necessarily establish that it is covered by federal question jurisdiction. A better term might be "jurisdictional preemption" because it is a doctrine that not only preempts the substantive state law but also supports federal jurisdiction to address the issue regardless of the procedural context in which the matter is brought before the federal court. It should also be noted that a claim of ordinary preemption, as opposed to complete preemption (jurisdictional preemption), is not a defense to the well-pleaded complaint rule. "Ordinary preemption" is an affirmative defense to the allegations in a plaintiff's complaint asserting a state law claim claiming that a state law conflicts with, and is overridden by, a federal law. On the other hand, complete preemption does not constitute a defense at all. Rather, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is actually and entirely a matter of federal law, even if the state law would provide a cause of action in the absence of the federal law. Therefore, complete preemption creates the federal question jurisdiction requisite to removal of the claim to federal courts.[13]

The case before us involves the issue of complete (or, more appropriately, jurisdictional) preemption.

 Our analysis begins with ERISA, which has a broad preemptive purpose. In enacting ERISA, one of Congress's principal goals was "to enable employers 'to

---

**11.** *Wilmington Trust Co. v. Aetna Cas. & Sur. Co.,* 690 A.2d 914, 916 (Del.1996).

**12.** *Linn v. Del. Child Support Enforcement,* 736 A.2d 954, 959 (Del.1999); *Marine v. State,* 607 A.2d 1185, 1200 n. 7 (Del.1992).

**13.** 1 MOORE'S MANUAL—FEDERAL PRACTICE AND PROCEDURE (2007) § 5.13[3][b] (citations omitted).

establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.' " [14] To effectuate that goal, § 514 of ERISA provides that "the provisions of this title ... shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." [15] Even where the causes of action do not fall under the terms of § 514, if the state cause of action falls "within the scope of" the civil enforcement provision of § 502, the action is still preempted and removable to federal district court.[16]

■ In examining the congressional intent underlying § 502, the U.S. Supreme Court has held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." [17] The policy underlying these preemption provisions is to maintain uniformity of the federal administrative scheme,[18] as the U.S. Supreme Court has recognized:

It is thus clear that ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations.[19]

The integrated enforcement provisions of § 502 implement this policy.[20] For example, § 502(a)(1)(B) allows a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under

---

14. *Egelhoff v. Egelhoff,* 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). *See also id.* ("Uniformity is impossible, however, if plans are subject to different legal obligations in different States."); *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.").

15. 29 U.S.C. § 1144(a) (emphasis added). The Fund is a plan subject to this section. *See* 29 U.S.C. § 1003(a) ("[T]his title shall apply to any employee benefit plan if it is established or maintained ... by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce....").

16. *See Davila,* 542 U.S. at 214, 124 S.Ct. 2488; *id.* at 214 n. 4, 124 S.Ct. 2488 (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). There is no dispute that the Fund is

a fiduciary under ERISA and that its suit in District Court was to enforce the rights of the subrogation provisions in the Plan and the Agreement. *See* 29 U.S.C. § 1132(a)(3).

17. *Davila,* 542 U.S. at 209, 124 S.Ct. 2488.

18. *See id.* at 208, 124 S.Ct. 2488.

19. *Coyne,* 482 U.S. at 11, 107 S.Ct. 2211. *See also id.* at 11–12, 107 S.Ct. 2211 ("It is for this reason that Congress pre-empted state laws relating to *plans,* rather than simply to *benefits.* Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.").

20. *See Davila,* 542 U.S. at 208, 124 S.Ct. 2488 ("This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans.").

the terms of the plan." [21] Section 502(a)(3) allows a participant, beneficiary or fiduciary to use this section "to enjoin any act or practice which violates any provision of this title or the terms of the plan" or "to obtain other appropriate *equitable relief* ...." [22]

In *Great–West Life & Annuity Insurance Co. v. Knudson,* [23] the U.S. Supreme Court explained that "equitable relief" under § 502(a)(3) requires that the action for restitution "must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." [24] The Court explicitly left open the issue of "whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would [be] pre-empted by ERISA." [25] Before *Great–West,* courts throughout the country generally found that ERISA had preempted certain state-law claims, including breach of contract actions brought to enforce reimbursement claims under a subrogation agreement.[26] After *Great–West,* courts were divided on the question of whether a fiduciary could enforce a subrogation provision under § 502(a)(3).[27] In 2006, the U.S. Supreme Court answered that question affirmatively in *Sereboff v. Mid Atlantic Medical Services, Inc.*[28] The *Sereboff* case has remarkable similarities to the case before us.

In *Sereboff,* the beneficiaries of an ERISA plan were involved in a car accident and suffered injuries.[29] Under its "Acts of Third Parties" provision, the plan required a "beneficiary who 'receives benefits' under the plan for such injuries to 'reimburse [Mid Atlantic]' for those benefits from '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise).'"[30] The plan paid the beneficiaries' medical expenses, and the beneficiaries sought to recover compensatory

---

**21.** 29 U.S.C. § 1132(a)(1)(B).

**22.** 29 U.S.C. § 1132(a)(3) (emphasis added).

**23.** 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

**24.** *Id.* at 214, 122 S.Ct. 708.

**25.** *Id.* at 220, 122 S.Ct. 708.

**26.** *See, e.g., Bast v. Prudential Ins. Co. of Am.,* 150 F.3d 1003, 1010 (9th Cir.1998) ("We agree with our sister circuits that ERISA preempts state law claims, even if the result is that a claimant, relegated to asserting a claim only under ERISA, is left without a remedy."); *Jefferson–Pilot Life Ins. Co. v. Krafka,* 50 Cal.App.4th 190, 57 Cal.Rptr.2d 723, 726 (1996) ("This action alleges a violation of the terms of the plan and is brought to enforce the reimbursement provision of the policy. It follows that plaintiff's state common law causes of action 'relate to' the plan and are preempted."); *A. Copeland Enters., Inc. v. Slidell Mem. Hosp.,* 657 So.2d 1292, 1302 (La. 1995) (denying jurisdiction to a fiduciary of a plan claiming rights under a subrogation agreement because it was not a participant or beneficiary under 29 U.S.C. § 1132(e)). *But see, e.g., Behav. Scis. Inst. v. Great–West Life,* 84 Wash.App. 863, 930 P.2d 933, 935 (1997)

(finding that ERISA did not preempt an action for breach of contract and bad faith where the "stop loss" reinsurer denied coverage of employee's medical treatment); *Ragan v. Tri–County Excavating, Inc.,* 62 F.3d 501, 511 (3d Cir.1995) (finding that ERISA would not preempt a court from determining a surety's obligations under a bond where the court would not have to determine "the validity or status of the funds" or the surety's "motives regarding employee benefits").

**27.** *Compare Admin. Comm. of Wal–Mart Assocs. Health & Welfare Plan v. Willard,* 393 F.3d 1119 (10th Cir.2004); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348 (5th Cir.2003); *and Admin. Comm. of the Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan v. Varco,* 338 F.3d 680 (7th Cir.2003) *with Qualchoice, Inc. v. Rowland,* 367 F.3d 638 (6th Cir.2004) *and Westaff (USA) Inc. v. Arce,* 298 F.3d 1164 (9th Cir.2002).

**28.** 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006).

**29.** *Id.* at 1872.

**30.** *Id.*

damages from the third party tortfeasors as a result of the accident.[31] The plan asserted a lien on the anticipated proceeds from the beneficiaries' suit, which eventually settled. After the beneficiaries refused to reimburse the plan, the plan sought to recover the settlement proceeds due it in federal district court under § 502(a)(3) of ERISA.[32] The district court found in the plan's favor and the Fourth Circuit affirmed in relevant part.[33] To resolve a split among the Circuit Courts of Appeal, on the question of whether § 502(a)(3) authorized recovery in these circumstances, the U.S. Supreme Court granted certiorari. Affirming the Fourth Circuit, the Court concluded that the relief the plan was seeking in the federal district court was "equitable" under § 502(a)(3).[34]

■ Here, the Fund, consistent with *Sereboff,* was entitled under § 502(a)(3) of ERISA to seek an equitable lien or constructive trust in federal court over the settlement proceeds the Brewsters had received. That the Fund's *Sereboff* claim also could be duplicated or supplemented by a state law claim to enforce the same subrogation right does not deprive a federal court of its exclusive jurisdiction under ERISA.[35] As the U.S. Supreme Court explained in *Metropolitan Life Insurance Company v. Taylor:* "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." [36] In both that case and in *Aetna Health Inc. v. Davila,*[37] the U.S. Supreme Court emphasized the "congressional intent to make the ERISA remedy exclusive" under § 502(a).[38]

Both the Plan and the Agreement specifically contemplated relief that the Fund could seek under ERISA, namely, the assignment of the settlement proceeds equal to the amount of benefits paid. Even though state law also provides a cause of action to enforce subrogation rights, ERISA has preempted the jurisdiction of the Delaware courts over the Fund's equitable claim to the settlement proceeds. We agree with the Superior Court that Mrs. Brewster's agreement with the Fund also "relates to" the Plan under § 514(a) of ERISA.[39] The Plan expressly required

31. *Id.*

32. *Id.* at 1873.

33. *Id.*

34. *Id.* at 1878. *See also id.* at 1877 ("As explained, Mid Atlantic's action to enforce the "Acts of Third Parties" provision qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement, of the sort epitomized by our decision in [*Barnes v. Alexander,* 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 (1914) ].")

35. *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

36. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). *See also Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 7, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (affirming the approach in *Metropolitan Life* in support of removal because of the statutory text in § 502(a)).

37. 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

38. *Id.* at 209, 124 S.Ct. 2488. For example, in evaluating preemption under § 502(a)(1)(B), the U.S. Supreme Court has stated that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's action, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.* at 210, 124 S.Ct. 2488.

39. We distinguish the cases that the Fund has relied upon, specifically *Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reim-*

the repayment of benefits from any money received from a third party for expenses paid by the Fund. The Plan also required the Agreement, which Mrs. Brewster signed.

We also agree with the Fund that the Superior Court erred in suggesting that the Fund had no remedy to enforce subrogation. *Sereboff* holds that there was an ERISA remedy for the Fund, namely, to enforce subrogation claims under § 502(a)(3) by way of a constructive trust or equitable lien. The availability of that remedy supports jurisdictional preemption in this case. Because Congress intended that remedy under ERISA to be exclusive, the Fund's state subrogation claim is preempted.[40] The Superior Court did not have jurisdiction to decide the merits of the Fund's subrogation claim. Accordingly, the Superior Court did not err in granting summary judgment.

### III.

The judgment of the Superior Court is **AFFIRMED.**[41]

---

*bursement Plan,* 388 F.3d 393 (3d Cir.2004); *Ragan v. Tri–County Excavating Inc.,* 62 F.3d 501 (3d Cir.1995); *Providence Health Plan v. McDowell,* 385 F.3d 1168 (9th Cir.2004); and *AFL Hotel & Restaurant Workers Health & Welfare Fund v. Bosque,* 110 Hawai'i 318, 132 P.3d 1229 (2006). In *Pascack Valley,* the party bringing the breach of contract claim lacked standing under § 502(a) of ERISA. *Pascack Valley,* 388 F.3d at 400. *Sereboff* makes clear that the Fund could bring an action under ERISA. In *Ragan,* the district court was asked to determine a surety's obligations under a bond. *Ragan,* 62 F.3d at 511. The court determined that the cause of action was under common law and not "specifically designed to affect employee benefits plans," did not " 'single[ ] out' such plans for special treatment" or was " 'predicated on the existence of' an ERISA plan." *Id.* (citations omitted). The Agreement here does not have an independent legal duty like the bond in *Ragan. Providence Health,* decided after *Great–West* but before *Sereboff,* relied upon a earlier Ninth Circuit opinion, *Westaff (USA) Inc. v. Arce,* 298 F.3d 1164 (9th Cir.2002) in support of its conclusion that § 502(a)(3) did not apply. *Providence Health,* 385 F.3d at 1174. *Sereboff* effectively overruled *Westaff. See Sereboff v. Mid Atl. Med. Servs.,* 547 U.S. 356, —— n. 1, 126 S.Ct. 1869, 1873 n. 1, 164 L.Ed.2d 612 (2006). At least one other court has also questioned the precedential value of *Providence Health* after *Sereboff. See Totten v. Hill,* 154 Cal.App.4th 40, 64 Cal.Rptr.3d 357, 362 (2007). *Bosque,* also decided before *Sereboff,* relies heavily on *Providence Health* and its interpretation of *Great–West. Bosque,* 132

P.3d at 1232–38. After *Sereboff,* we do not find *Bosque's* reasoning persuasive.

**40.** *See Popowski v. Parrott,* 461 F.3d 1367, 1373 (11th Cir.2006) (finding that a plan's subrogation and reimbursement provision with "language essentially identical to the Supreme Court's characterization of the plan language in *Sereboff*" is a claim for "appropriate equitable relief" under § 502(a)(3) and the district court has jurisdiction); *Moore v. CapitalCare, Inc.,* 461 F.3d 1, 8 (D.C.Cir.2006) (analyzing *Sereboff* and acknowledging that the parties no longer challenged federal jurisdiction for their claim for an equitable lien over settlement proceeds because *Sereboff* made clear that § 502(a)(3) provides for equitable relief where the funds sought are identifiable); *Totten v. Hill,* 154 Cal.App.4th 40, 64 Cal.Rptr.3d 357 (2007) (analyzing *Sereboff* and the complete preemption doctrine and concluding that "[a]llowing the Trustee's breach of contract cause of action, which arises entirely from the terms of the ERISA plan, to proceed in state court would impermissibly supplement the ERISA civil enforcement scheme and seriously undermine the goal of uniformity promoted by it"). *See also Wood v. Prudential Ins. Co. of Am.,* 207 F.3d 674, 679 (3d Cir.2000) ("Complete preemption would be an empty doctrine if a plaintiff could plead his way into state court by seeking only money damages.").

**41.** Whether or not the Fund is entitled to relief under Fed.R.Civ.P. 60(b) in the U.S. District Court is a matter addressed to the discretion of that court.