**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

IN RE: PROTON PUMP INHIBITORS ) Master Case No.:
PRODUCTS LIABILITY LITIGATION ) C.A. No. N17C-07-001 PPI
)
)
This Opinion Relates to: )
)
LHC GROUP, INC., Administrator of )
the LHC Group Benefit Plan, on )
behalf of itself and as Subrogee, )
)
Plaintiff, ) C.A. No. N21C-11-228 PPI
)
v. )
)
ABBOTT LABORATORIES, et al, )
)
Defendants. )

Submitted: April 29, 2022[1]
Decided: August 11, 2023

*Upon Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP and Merck Sharp & Dohme Corporation's Motion to Dismiss*
**DENIED**
*Upon Defendants Abbott and Takeda's Motion to Dismiss*
**DENIED**

Thomas G. Macauley, Esquire, Macauley LLC, Wilmington, DE, Martin Bienstock, Esquire, Bienstock PLLC, Washington, D.C., *Attorneys for Plaintiff LHC Group, Inc., Administrator of the LHC Group Benefit Plan, on behalf of itself and as Subrogee*.

James J. Freebery, Esquire, Daniel J. Brown, Esquire, Makenzie Windfelder, Esquire, Hayley J. Reese, Esquire, Chelsea A. Botsch, Esquire, McCarter & English, LLP, Wilmington, Delaware, Arthur E. Brown, Esquire, William Hoffman, Esquire, Matthew Douglas, Esquire, Arnold & Porter Kaye Scholer LLP, New York, New York, Amy K. Fisher, Esquire, Katherine D. Althoff, Esquire, Carolyn E. Riggs, Esquire, Ice Miller LLP, Indianapolis, Indiana, *Attorneys for Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Merck Sharp & Dohme Corporation*.

Philip A. Rovner, Esquire, Jonathan A. Choa, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Sherry Knutson, Esquire, Tucker Ellis LLP, Chicago, Illinois, Craig A.

---

[1] D.I. No. 36. The Court last held a status conference on these matters on July 14, 2023. *See In re Proton Pump Inhibitors Products Liability Litigation*, C.A. No. N17C-07-001 PPI (D.I. No. 336).

Thompson, Venable LLP, Baltimore, Maryland, *Attorneys for the Defendants Abbott and Takeda.*

**DAVIS, J.**

## I.       INTRODUCTION

This is a personal injury action involving products liability claims.  Plaintiff LHC Group, Inc. ("LHC")[2] commenced this personal injury action against Defendants Abbott Laboratories, AstraZeneca Pharmaceuticals LP, AstraZeneca PLC, AstraZeneca AB, Zeneca Inc., Astra US Holding Corporation, Astra USA LLC, AstraZeneca LP,KBI Sub, Inc., GlaxoSmithKline Consumer Healthcare Holdings (US) LLC, GlaxoSmithKline Consumer Healthcare LP, GlaxoSmithKline Consumer Healthcare Holdings (US) IP LLC, Merck & Co. Inc. d/b/a Merck, Sharp & Dohme Corporation, Novartis Corporation, Novartis Pharmaceutical Corporation, Novartis Vaccines and Diagnostics, Inc., Novartis Institutes for Biomedical Research, Inc., Novartis Consumer Health, Inc., Pfizer, Inc., Takeda Pharmaceuticals USA, Inc., Takeda Pharmaceuticals America, Inc., Takeda Pharmaceuticals LLC, Takeda Pharmaceuticals International, Inc., Takeda California, Inc., Takeda Development Center Americas, Inc. f/k/a Takeda Global Research & Development Center, Inc. Takeda Pharmaceutical Company Limited, TAP Pharmaceutical Products, Inc. f/k/a TAP Holdings Inc., Wyeth Pharmaceuticals, Inc., Wyeth- Ayerst Laboratories and Wyeth LLC (collectively, "Defendants")[3] and their affiliates, subsidiaries and/or joint venturers.

---

[2] Amended Complaint ¶ 4 ("LHC Group brings this action as Administrator of the Plan, both directly and as subrogee of the Injured Member's claims against Defendants pursuant to Section 11.03 of the Plan.") (D.I. No. 36).

[3] For purposes of this decision: (i) the "Abbott and Takeda Defendants" shall mean Abbott Laboratories, Takeda Pharmaceuticals USA, Inc., Takeda Pharmaceuticals America, Inc., Takeda Pharmaceuticals LLC, Takeda Pharmaceuticals International, Inc., Takeda California, Inc., Takeda Development Center Americas, Inc. f/k/a Takeda Global Research & Development Center, Inc. Takeda Pharmaceutical Company Limited, TAP Pharmaceutical Products, Inc. f/k/a TAP Holdings Inc.; and (ii) "AstraZeneca and Merck Defendants" shall mean AstraZeneca Pharmaceuticals LP, AstraZeneca PLC and Merk Sharp & Dohme Corporation (identified by LHC as Merck & Co. Inc. d/b/a Merck, Sharp & Dohme Corporation).

In the Amended Complaint, LHC asserts eleven (11) claims against Defendants. LHC alleges that Defendants' PPI products were dangerous to human health, defectively designed, lacked proper warning signs, and unfit and unsuitable to be marketed and sold in the United States. LHC seeks compensatory and punitive damages, monetary restitution, disgorgement and an accounting, and all other available remedies.

The AstraZeneca and Merck Defendants moved to dismiss the Amended Complaint under Civil Rule 12(b)(1). The Abbot and Takeda Defendants also moved to dismiss the Amended Complaint, relying on Civil Rules 9(b) and 12(b)(6). The AstraZeneca and Merck Defendants assert that the Court lacks subject matter jurisdiction over LHC's claims. In addition, the Abbott and Takeda Defendants contend that LHC failed to sufficiently plead its claims and have not provided Defendants with adequate notice. In sum, Defendants collectively moved (the "Motions")[4] to dismiss all claims asserted by LHC.

For the reasons stated below, the Court **DENIES** the Motions.

## II. RELEVANT FACTS

### A. FACTUAL BACKGROUND

LHC is a Delaware corporation with its principal place of business in Louisiana.[5] LHC is the Administrator of the LHC Group Benefit Plan (the "Plan").[6] LHC has brought its claims as "Administrator of the Plan, both directly and as subrogee of the Injured Member's claims against Defendants pursuant to Section 11.03 of the Plan."[7]

LHC contends that Defendants are "responsible for designing, researching, developing, testing, manufacturing, packaging, labeling, marketing, promoting, distributing, and/or selling

---

[4] The Motions are described more in Section II.B and Section III.
[5] Am. Compl. ¶ 4.
[6] *Id.*
[7] *Id.*

3

the PPI Products including, but not limited to Dexilant, Nexium, Nexium 24HR, Prevacid, Prevacid 24HR, Prilosec, Prilosec OTC and Protonix."[8] LHC notes that PPI products are used to "suppress the production of acid in order to reduce the risk of duodenal ulcer recurrence and NSAID-associated gastric ulcers as well as to treat gastroesophageal reflux disease ('GERD') and certain pathological hypersecretory conditions including Zollinger-Ellison syndrome."[9]

LHC brings this action as a subrogee on behalf of its Plan members who allegedly suffered and were diagnosed with "various forms of kidney injury, which were directly and proximately caused by their regular and prolonged use of the PPI Products."[10] Some of these kidney injuries and diseases "include, but are not limited to, Acute Interstitial Nephritis ('AIN'), Acute Kidney Injury ('AKI'), Chronic Kidney Disease ('CKD') and End-Stage Renal Disease 'ESRD')."[11]

### B. PROCEDURAL HISTORY

On April 29, 2022, LHC filed the Amended Complaint asserting eleven counts against Defendants.[12] LHC alleges eleven cause of actions; Count I – Strict Product Liability, Count II – Strict Product Liability – Design Defect, Count III – Strict Product Liability – Failure to Warn, Count IV – Negligence, Count V – Negligence Per Se, Count VI – Breach of Express Warranty, Count VII – Breach of Implied Warranty, Count VIII – Negligent Misrepresentation, Count IX – Fraud and Fraudulent Misrepresentation, Count X – Fraudulent Concealment, Count XI – Violation of Consumer Protection Laws and Deceptive Trade Practices.[13]

---

[8] *Id.* ¶ 1.
[9] Am. Compl. ¶ 2.
[10] *Id.* ¶ 5.
[11] *Id.*
[12] D.I. No. 36.
[13] Am. Compl. ¶¶ 245-448.

As stated above, the AstraZeneca and Merck Defendants moved to dismiss the Amended Complaint. On May 13, 2022, the Abbott and Takeda Defendants filed the Abbott and Takeda Defendants' Renewed Rule 9(b) and 12(b)(6) Motion to Dismiss for Failure to State a Claim (the "Civil Rule 12(b)(6) Motion").[14] Pfizer, Inc., Wyeth Pharmaceuticals, Inc., Wyeth- Ayerst Laboratories and Wyeth LLC filed a joinder to the Civil Rule 12(b)(6) Motion on May 17, 2022.[15] The AstraZeneca and Merck Defendants submitted their Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Merck Sharp & Dohme Corporation's Joinder in the Renewed Motion to Dismiss of the Abbott and Takeda Defendants on May 13, 2022.[16] LHC opposed the Civil Rule 12(b)(6) Motion, filing the Plaintiff's Answering Brief to Motion to Dismiss of Abbott and Takeda Defendants for Failure to State a Claim (the "Civil Rule 12(b)(6) Response") on June 13, 2022.[17] On July 11, 2022, the Abbott and Takeda Defendants filed the Reply Brief in Support of Abbott and Takeda Defendants' Rule 9(b) and 12(b)(6) Motion to Dismiss for Failure to State a Claim (the "Civil Rule 12(b)(6) Reply").[18]

The AstraZeneca and Merck Defendants filed the Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP and Merck Sharp & Dohme Corporation's Motion to Dismiss Plaintiff's Amended Complaint (the "Civil Rule 12(b)(1) Motion") on May 13, 2022.[19] On May 13, 2022, the Abbott and Takeda Defendants filed a joinder to the Civil Rule 12(b)(1) Motion.[20] GlaxoSmithKline Consumer Healthcare Holdings (US) LLC and Novartis Consumer Health, Inc. (n/k/a GSK Consumer Health, Inc.) also joined the Civil Rule 12(b)(1) Motion on

---

[14] D.I. No. 40.
[15] D.I. No. 45.
[16] D.I. No. 43.
[17] D.I. No. 48.
[18] D.I. No. 49.
[19] D.I. No. 38.
[20] D.I. No. 44.

May 13, 2022.[21] Pfizer, Inc., Wyeth Pharmaceuticals, Inc., Wyeth- Ayerst Laboratories and Wyeth LLC then joined the Civil Rule 12(b)(1) Motion on May 17, 2022.[22] On June 13, 2022, LHC filed its Plaintiff LHC Group, Inc.'s Answering Brief to Motion to Dismiss of Defendants AstraZeneca Pharmaceuticals LP et al. (the "Civil Rule 12(b)(1) Response").[23] On July 11, 2022, the AstraZeneca and Merck Defendants filed the Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP and Merck Sharp & Dohme Corporation's Reply Brief in Support of Their Motion to Dismiss Plaintiff's Amended Complaint for lack of Subject Matter Jurisdiction (the Civil Rule 12(b)(1) Reply").[24]

The Court conducted status conferences on the Motions and all related pleadings, with the last conference happening on July 14, 2023. At the conclusion of the status conference, the Court took the Motions under advisement. This is the Court's decision on the Motions.

### III.  PARTIES' CONTENTIONS

#### A.  THE CIVIL RULE 12(b)(1) MOTION

##### 1.  Defendants

The AstraZeneca and Merck Defendants argue that the Court should dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to Court Rule 12(b)(1).[25] According to the AstraZeneca and Merck Defendants, the Supreme Court has made it clear that "subrogation claims under ERISA must be brought in federal court."[26] Specifically, the AstraZeneca and Merck Defendants assert that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]"[27] Moreover, the

---

[21] D.I. No. 41.
[22] D.I. No. 46.
[23] D.I. No. 47.
[24] D.I. No. 49.
[25] Defendants' 12(b)(1) Opening Brief to First Amended Complaint ("Defs.' 12(b)(1) Opening Br.") at 1-2 (D.I. 39).
[26] *Id*. at 7.
[27] *Id*.; (citing 29 U.S.C. § 1144(a) ("§ 514")).

AstraZeneca and Merck Defendants contend that "[c]auses of action not preempted by [Section] 514 are otherwise preempted if they 'fall [] "within the scope of"' ERISA's civil enforcement provision in [Section] 502."[28]  To the AstraZeneca and Merck Defendants, Section 514 preempts all of LHC's claims.[29]  AstraZeneca and Merck  contend that, at best, this action belongs in federal court.[30]

Additionally, the AstraZeneca and Merck Defendants contend this case belongs in "federal court pursuant to [Section] 502(a)(3)."[31]  AstraZeneca and Merck maintain that "to the extent [LHC] seeks reimbursement for benefits paid under the Plan, that claim should be in the form of a constructive trust or equitable lien and does not belong in this Court."[32]  In the alternative, AstraZeneca and Merck assert that, if this action is not preempted, the Court still lacks subject matter jurisdiction because the action belongs in the Court of Chancery.[33]

Last, AstraZeneca and Merck argue that dismissal should be prejudice.[34]  AstraZeneca and Merck make this request because "Plaintiff already voluntarily dismissed an identical action, Plaintiff's Amended Complaint should be dismissed with prejudice."[35]

### 2. LHC

LHC insists that its claims are not preempted as the claims do not fall within the civil enforcement provisions of Section 502.[36]  LHC notes that application of the Third Circuit's two-

---

[28] Defs.' 12(b)(1) Opening Br. at 8; *Asbestos Workers Local Union No. 42 Welfare Fund v. Brewster*, 940 A.2d 935, 941 (Del. 2007).
[29] Defs.' 12(b)(1) Opening Br. at 9.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] Defs.' 12(b)(1) Opening Br. at 9.
[35] *Id.* at 10.
[36] Plaintiffs' Answering Brief in Opposition to Defendants' 12(b)(1) Motion ("Pls.' 12(b)(1) Answering Br.") at 5 (D.I. 48).

part test for preemption demonstrates that LHC's claims are not preempted by ERISA.[37] LHC

maintains it "could not have brought this claim under ERISA [Section] 502(a) because the claims

are for tort damages" and because "the claims depend upon tort law, which is an independent

duty which supports LHC's claim."[38] Next, LHC argues that the Supreme Court's decision in

"[*Asbestos Workers Local Union No. 42 Welfare Fund v.*] *Brewster*[39] involved a dispute between

an ERISA plan trustee and one of its members concerning the disposition of settlement funds

that already had been paid to the member."[40] LHC notes that this case does not involve a dispute

between a plan and its members[41] and, therefore, *Brewster* is not controlling.[42]

LHC also maintains that its claims are not subject to conflict preemption.[43] Applying the

Third Circuit test for "relate to" used in Section 514, LHC argues that "the tort laws relied on in

the Amended Complaint are product liability claims of general applicability" and "the tort laws

do not relate at all to plan administration or issues of uniformity, nor do they force a plan to

adopt a scheme or restrict its choices."[44] Therefore, LHC asserts that its claims are not

preempted.[45]

Last, LHC contends that jurisdiction lies properly in this Court.[46] LHC notes that the

claims in this case seek to hold the defendants liable for damages in tort.[47] As such, LHC's

claims properly lie in a court of general jurisdiction rather than equity.

---

[37] *Id.*
[38] *Id.*
[39] 940 A.2d 935, 941 (Del. 2007)
[40] Pls.' 12(b)(1) Answering Br at 7.
[41] *Id.* at 8.
[42] *Id.*
[43] *Id.*
[44] Pls.' 12(b)(1) Answering Br at 9.
[45] *Id.*
[46] *Id.* at 10.
[47] *Id.*

## B. THE CIVIL RULE 12(b)(6) MOTION

### 1. *Defendants*

The Abbott and Takeda Defendants argue that the Court should dismiss the Amended Complaint for failure to "provide proper notice of Plaintiff's claims to the Abbott and Takeda Defendants" and "to meet the requirements of Rule 9(b)."[48]  Specifically, the Abbott and Takeda Defendants provide that it cannot be:

> fairly inferred that the allegations against all 'Defendants' and anonymous listing of members' claims by type of PPI (but not specific brand-name or over-the-counter PPI) gives notice to the Abbott and Takeda Defendants of the claims against them, because different manufacturers are linked to different PPIs at different points of time, with no suggestion that any particular manufacturer had exclusive manufacturing or distribution rights.[49]

The Abbott and Takeda Defendants note that LHC's Exhibit A redacted substantial amounts of essential information and did not comply with Civil Rule 15(aa).[50]

The Abbott and Takeda Defendants contend that the "sporadic and incomplete information provided about the members' individual circumstances" precludes fair notice.[51]  The Abbott and Takeda Defendants contend that the Court's decision in *Hupan v. Alliance One International, Inc.*[52] is instructive here.[53]  The Abbott and Takeda Defendants refer that that part in *Hupan* which provides that "[i]f Plaintiff believes that a Defendant's product caused a Plan member's injuries, then its claims must give fair notice to that entity of its alleged wrongdoing (product design, warnings, etc.) and factual allegations linking that entity's product (and not a

---

[48] Defendants' 12(b)(6) Opening Brief to First Amended Complaint ("Defs.' 12(b)(6) Opening Br.") at 11 (D.I. No. 40)

[49] Defs.' 12(b)(6) Opening Br. at 11.

[50] Defendants' 12(b)(6) Reply Brief to First Amended Complaint ("Defs. 12(b)(6) Reply Br.") at 2-3 ("Plaintiff also did not provide a blackline copy of Exhibit A, as required by Superior Court Rule 15(aa), despite requests for it by Defense Counsel.") (D.I. 50).

[51] Defs.' 12(b)(6) Opening Br. at 12.

[52] 2015 WL 7776659 (Del. Super. Sept. 13, 2016).

[53] *Id.* at 13.

9

competitor's) to the alleged harm."[54] The Abbott and Takeda Defendants argue that the Amended Complaint does not provide fair notice of the defective product and factual allegations that link that product to the alleged harm.[55]

Additionally, the Abbott and Takeda Defendants argue that the Amended Complaint improperly joins the distinct individual claims of dozens of Plan members.[56] The Abbott and Takeda Defendants claim that under the common issues/same transactions joinder requirements of Rule 20 or Rule 23 "LHC has failed to allege facts sufficient to demonstrate that it can satisfy either of these procedural routes for joining multiple parties' claims."[57] In addition, the Abbott and Takeda Defendants maintain that, in violation of Delaware law, "LHC, as subrogee, is attempting to exercise greater rights than its subrogor members and to circumvent the requirements of either Rule 20 or 23 to consolidate their individual claims."[58]

Last, the Abbott and Takeda Defendants argue that the Court should dismiss the Amended Complaint without prejudice. The Abbott and Takeda Defendants rely on Civil Rule 41, arguing that, because "Plaintiff already voluntarily dismissed an identical action (*see* Trans. ID. No. 6712559)," the Court must dismiss the Amended Complaint with prejudice.[59]

### 2. *LHC*

LHC disagrees with the Abbott and Takeda Defendants' arguments. LHC insists that the information in Exhibit A is sufficient to state a claim under Rule 12(b)(6) and 9(b).[60] LHC argues that Exhibit A is adequate because it "identifies the injured party, by name, social security

---

[54] Defs.' 12(b)(6) Opening Br. at 13-14.
[55] *Id*. at 12.
[56] *Id*. at 14.
[57] *Id*. at 14-15.
[58] Defs.' 12(b)(6) Opening Br.at 15.
[59] *Id*. at 16.
[60] Plaintiffs' Answering Brief in Opposition to Defendants' 12(b)(6) Motion ("Pls.' 12(b)(6) Answering Br.") at 5 (D.I. 47).

10

number, and birth date; specifics of the nature of the injury by specific diagnosis code; assigns a location to the transaction in which the drug was prescribed; and identifies the defective product by specific NCD number."[61] LHC claims that this "extensive information" provides far more than what the Abbott and Takeda Defendants argue is required.[62]

Next, LHC contends that its claims are properly joined in one action.[63] LHC argues that Civil Rule 18(a) allows LHC "to submit its subrogated claims in a single action."[64]

LHC finally argues the if the Court dismisses the Amended Complaint, dismissal should occur without prejudice.[65] LHC insist that the Abbott and Takeda Defendants misstate Civil Rule 41.[66] LHC notes that Civil Rule 41(a) applies to voluntary dismissals;[67] however, "[a]ny dismissal on the Motion would not be a voluntary dismissal, but rather an involuntary one."[68] LHC concludes "[i]f the wealth of information in Exhibit A is somehow insufficient or the joinder of claims under Rule 18 somehow mistaken, the Court should grant LHC leave to file a further amended complaint to cure any deficiency."[69]

## IV.  STANDARD OF REVIEW

### A.  CIVIL RULE 12(b)(1)

"Under Superior Court Civil Rule 12(b)(1), a party may move to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.[70] "'Whenever it appears by suggestion of the parties or otherwise' that the Court lacks subject matter jurisdiction, the Court must dismiss the

---

[61] Pls.' 12(b)(6) Answering Br. at 6.
[62] *Id.*
[63] Pls.' 12(b)(6) Answering Br. at 7.
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] Pls.' 12(b)(6) Answering Br. at 8.
[68] *Id.*
[69] Pls.' 12(b)(6) Answering Br. at 8-9.
[70] Super. Ct. Civ. R. 12(b)(1).

claim."[71]  In considering a Civil Rule 12(b)(1) motion, the Court "need not accept [the plaintiff's] factual allegations as true and is free to consider facts not alleged in the complaint."[72] Accordingly, whereas the movant "need only show that the Court lacks jurisdiction,"[73] the non-movant bears the "far more demanding" burden "to prove jurisdiction exists."[74]

## B. Civil Rule 12(b)(6) and 9(b)

Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[75]  However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[76]

Under Civil Rule 9(b), a party must plead fraud and negligence with particularity.[77]  "The purpose of [Rule 9(b)] is to apprise the adversary of the acts or omissions by which it is alleged that a duty has been violated."[78]  To plead fraud or negligence with the particularity required by

---

[71] *KT4 P'rs LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *24 (Del. Super. June 24, 2021) (alteration and emphasis omitted) (quoting Super. Ct. Civ. R. 12(h)(3)).

[72] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (internal quotation marks omitted); *see Nelson v. Russo*, 844 A.2d 301, 302 (Del. 2004) ("In deciding whether the Superior Court has subject matter jurisdiction, we must look beyond the language in the complaint . . . ."); *see also Texcel v. Com. Fiberglass*, 1987 WL 19717, at *2 (Del. Super. Nov. 3, 1987) ("The gravamen of subject matter jurisdiction . . . lies not in the pleading but in the existence of facts necessary for the court to exercise its jurisdiction.").

[73] *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Dec. 15, 2015), *aff'd* 2016 WL 4938890 (Del. Sept. 16, 2016).

[74] *Appriva*, 937 A.2d at 1284 n.14 (internal quotation marks omitted).

[75] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).

[76] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

[77] Super. Ct. Civ. R.  9(b).

[78] *Mancino v. Webb*, 274 A.2d 711, 713 (Del. Super. 1971).

Rule 9(b), a party must include the "time, place, contents of the alleged fraud or negligence, as well as the individual accused of committing the fraud" or negligence.[79]

## V.    DISCUSSION

### A.    THE COURT HAS SUBJECT MATTER JURISDICTION.

#### 1.  Evaluation under ERISA

LHC has brought this action as Administrator of the Plan.[80]  LHC is an administrator, which, under ERISA, is a "person specifically so designated by the terms of the instrument under which the plan is operated."[81]  Under Section 502(a)(3), subrogation claims *can* be enforced "by way of constructive trust or equitable lien."[82]  LHC maintains that it "seeks to hold pharmaceutical manufacturers liable for the damages they caused."[83]  LHC states that it does not seek equitable relief.[84]

The Plan gives express subrogation rights. The language of Plan Section 11.03(a), in relevant part, provides:

> As a condition to participation in or the receipt of benefits under the Plan, each Covered Person agrees that the Plan will have the right of subrogation with respect to the full amount of benefits paid to or on behalf of a Covered Person as the result of an injury, illness, disability or death that is or may be the responsibility of any Third Party. The Plan will also have a lien upon any recovery from such Third Party to the full amount of benefits paid and may, at its option, file suit or intervene in any pending lawsuit to secure and protect its rights. The Plan's right of subrogation will apply to the first dollar of any recovery obtained from the Third Party, even if the recovery obtained is less than the amount needed to make the Covered Person whole. Regardless of how such claims or recoveries are classified or characterized by the parties, the courts or any other entity, such classification shall not impact the

---

[79] *See TrueBlue, Inc.*, *v. Leeds Equity Partners IV, LP*, C.A. No. N14C-12-112 WCC CCLD, 2015 WL 5968726, at *6 (Del. Super. Sept. 25, 2015) (quoting *Universal Capital Mgmt., Inc. v. Micco World, Inc.*, C.A. No. N10C-07-039-RRC, 2012 WL 1413598, at *2 (Del. Super. Feb. 1, 2012)).
[80] Am. Compl. ¶ 4.
[81] 29 U.S.C.A. § 1002 (16)(A)(i) (West).
[82] *Asbestos Workers Loc. Union No. 42 Welfare Fund v. Brewster,* 940 A.2d 935, 944 (Del. 2007).
[83] Pls.' 12(b)(1) Answering Brief at 8.
[84] *Id*. ("LHC's claims in this case seek to hold the defendants liable for damages in tort.").

covered individual's responsibilities described above or the Plan's entitlement to first-dollar recovery, regardless of whether the covered individual is made whole.[85]

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."[86] The United States Supreme Court has held "[a]ny state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted."[87] There is a strong preference for preemption under Section 502 (a).[88]

The United States Supreme Court has established a two-part test for claims not preempted by Section 514. The United States Supreme Court in *Aetna Health Inc. v. Davila* held that "a claim is completely preempted, and thus removable, under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim."[89] "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), *and where there is no other independent legal duty that is implicated by a defendant's actions*, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."[90]

### 2. The Circuit Courts Provide Persuasive Support for LHC.

The Third and Ninth Circuit Courts have held under the second prong "that a legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'"[91] Specifically, the Third Circuit held that "if the state

---

[85] Ex. B., § 11.03(a).
[86] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).
[87] *Davila*, 542 U.S. at 200-01.
[88] *Id.* ("ERISA § 502(a)'s pre-emptive force is still stronger.").
[89] *Aetna Health Inc. v. Davila*, 542 U.S. 200, 200-01 (2004).
[90] *Davila*, 542 U.S. at 210 (emphasis added).
[91] *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014) ("*Tishman*") (citing *Marin Gen. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 950 (9th Cir. 2009)).

14

law claim is not 'derived from, or conditioned upon' the terms of an ERISA plan, and '[n]obody needs to interpret the plan to determine whether that duty exists,' then the duty is independent."[92] "Because the test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied."[93] And if it is "conclude[d] that the defendant cannot meet the second prong of the test, [the court] need not decide whether it could have met the first prong."[94]

The AstraZeneca and Merck Defendants argue that LHC's subrogation claims are completely preempted because "they fall within the civil enforcement provisions of ERISA [Section] 502(a) pursuant to the U.S. Supreme Court's two-pronged test set forth in *Aetna Health Inc. v. Davila*."[95] The AstraZeneca and Merck Defendants claim that the second prong is satisfied because "the subrogation claims could not exist in the absence of the Benefits Plan and require interpretation of the Benefits Plan to determine the scope of LHC's subrogation rights."[96] The AstraZeneca and Merck Defendants also contend that the decision in *LHC Group, Inc. v. Bayer Corp.*[97] cited by LHC is not controlling on this Court and is inapposite.[98]

LHC counters, noting that because the claims at issue are tort claims brought by an ERISA Health Plan "while standing in the shoes of its members as subrogee," neither prong is satisfied.[99] Consequently, LHC insists that the Amended Complaint's claims do not fall within

[92] *Id.* (citing *Gardner v. Heartland Indus. Partners, LP,* 715 F.3d 609, 614 (6th Cir. 2013); *accord Stevenson v. Bank of N.Y. Co., Inc.,* 609 F.3d 56, 62 (2d Cir. 2010)).

[93] *Tishman,* 760 F.3d at 303.

[94] *Tishman*, 760 F.3d at 305 n.3.

[95] Defendants' 12(b)(1) Reply Brief to First Amended Complaint ("Defs. 12(b)(1) Reply Br.") at 2 (D.I. 49).

[96] Defs.' 12(b)(1) Reply Br. at 2-3.

[97] 2022 WL 774298 (N.D. Cal. Mar. 14, 2022) ("*Bayer*").

[98] Defs.' 12(b)(1) Reply Br. at 13. While the AstraZeneca and Merck Defendants argue that there is a difference between *Bayer* and *Tishman* that precludes LHC from using the Ninth Circuit opinion as persuasive, this Court finds that there is no conflict between the two holdings. Defendants hold that *Bayer* is inapposite because "the federal court analyzed complete preemption under ERISA §502(a)(1)(B) and was bound by Ninth Circuit law." (Defs.' 12(b)(1) Reply Br. at 14). And because *Bayer* analyzed complete preemption under §502(a)(1)(B) and *not* §502(a)(3) it is inapposite. (Defs.' 12(b)(1) Reply Br. at 14) (emphasis added). *Brewster* analyzes complete preemption under §502(a)(3). *Tishman* analyzes complete preemption under §502(a). The law does not make the desired distinction between §502(a) sections of the ERISA that Defendants wish.

[99] Pls.' 12(b)(1) Answering Br. at 5.

the civil enforcement provisions of Section 502.[100]

In *LHC Group, Inc. v. Bayer Corp.,* the U.S. District Court for the Northern District of California held that plaintiff's claims satisfied neither the first nor second prong of the *Davila* test. The *LHC Group, Inc.* court found that the "claims [we]re not brought under Section 502(a)(1)(B) to seek benefits; instead, they are purely state-law tort claims assigned to it to enforce on behalf of its plan members."[101] Accordingly, the *LHC Group, Inc.* court found that state law tort claims were independently imposed duties, and therefore, did not satisfy *Davila*.[102]

In *New Jersey Carpenters v. Tishman*, the Third Circuit determined whether the New Jersey Prevailing Wage Act ("PWA") was completely preempted by ERISA.[103] The *Tishman* court found that even if the language of the PWA overlapped with Section 502(a)(1)(B) or Section 502(a)(3) of ERISA, it still failed the second prong.[104] The Third Circuit found that the PWA established an independent legal duty and that the wages would still have to be paid regardless of ERISA.[105]

Here, these obligations are not based upon an ERISA plan.[106] Applying the second prong of *Davila*, the Court finds that LHC asserts purely state-law tort claims. LHC brings eleven counts—all duties independent of an ERISA plan.[107] It is state tort law that imposes a duty on the AstraZeneca and Merck Defendants. The AstraZeneca and Merck Defendants do not point to

---

[100] *Id.*

[101] *LHC Grp., Inc. v. Bayer Corp.,* 2022 WL 774298, at *2 (N.D. Cal. Mar. 14, 2022).

[102] *Id.*

[103] *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 300 (3d Cir. 2014).

[104] *Id.*

[105] *Tishman*, 760 F.3d at 304 ("No reference to any ERISA plan is necessary. The statute simply requires that the Commissioner set a prevailing wage, and that employers engaged in public works projects pay it.").

[106] *Marin Ge. Hosp. v. Modesto & Empire Traction Co.,* 581 F.3d 941, 950 (9th Cir. 2009). ("The question under the second prong of *Davila* is whether the complaint relies on a legal duty that arises independently of ERISA.").

[107] *LHC Grp., Inc. v. Bayer Corp.,* 2022 WL 774298, at *3 (N.D. Cal. Mar. 14, 2022) (Finding plaintiff's claims of negligence, strict products liability, concealment, intentional misrepresentation, negligent misrepresentation, breach of express warranty, quasi-contract and unjust enrichment are based on duties independent of the ERISA plan.).

any language that LHC's claims regarding the failure of AstraZeneca and Merck Defendants to design, research, develop, test, manufacture, package, label, market, promote, distribute and/or sell PPI products relate to the Plan or ERISA.[108]  Looking to what LHC must prove to prevail, there is "[n]o reference to any ERISA plan that is necessary."[109]

Because LHC's claims do not implicate the second prong, this Court does not have to decide whether the first prong applies.[110]

### 3.  The Delaware Supreme Court's Decision in Brewster

The AstraZeneca and Merck Defendants argue that the Supreme Court, in *Asbestos Workers Local Union No. 42 Welfare Fund v. Brewster*,[111] has made it clear that subrogation claims under ERISA are preempted.[112]  The AstraZeneca and Merck Defendants contend that *Brewster* is the controlling law on LHC's claims.

LHC disagrees, noting that *Brewster* "involved a dispute between an ERISA plan trustee and one of its members concerning the disposition of settlement funds that already had been paid to the member."[113]  LHC provides that this case concerns an action that does not involve a dispute between a plan and its members.[114]  As such, LHC maintains that the Amended Complaint's claims are not subject to complete preemption.

In *Brewster*, the Supreme Court held that the state law claim was preempted by Section

---

[108] *Davila*, 542 U.S. at 201 (Finding that respondents claims do not rise independently of ERISA or the plans terms because "[i]f a managed care entity correctly concluded that, under the relevant plan's terms, a particular treatment was not covered, the plan's failure to cover the requested treatment would be the proximate cause of any injury arising from the denial.").

[109] *Tishman*, 760 F.3d at 304 (finding that no interpretation or reference to any ERISA plan is necessary in order for plaintiff to prevail).

[110] *Tishman*, 760 F.3d at 305 n.3 (3d Cir. 2014) ("Because we conclude that the defendant cannot meet the second prong of the test, we need not decide whether it could have met the first prong.").

[111] 940 A.2d 935, 940-45 (Del. 2007) ("*Brewster*").

[112] Defs.' 12(b)(1) Opening. Br. at 7.

[113] Pls.' 12(b)(1) Answering Br.at 7.

[114] Pls.' 12(b)(1) Answering Br.at 8.

17

514 because the claim "relate[d] to" the benefit plan.[115]  Because the plan was established under

ERISA, the Court found that the claim related directly to Section 502(a)(3).[116]  The Supreme

Court stated that merely because a claim could "be duplicated or supplemented by a state law

claim to enforce the same subrogation right [that] does not deprive a federal court of its exclusive

jurisdiction under ERISA."[117]

The Court finds that *Brewster* is distinguishable from this case.  The claim in *Brewster*

involved the repayment by plaintiffs to a welfare fund.[118]  *Brewster*'s claim "relate[d] to" Section

502(a)(3) because the welfare plan expressly covered plaintiff as an injured dependent that

sought to have her medical expenses paid.[119]  This case involves a personal injury action against

over 20 pharmaceutical companies for their failure to provide safe PPI products.[120]  The tort law

claims involved are not identical to a claim under ERISA or the Plan.

Most notably, the Supreme Court, in *Brewster,* held that "ERISA has preempted the

jurisdiction of the Delaware courts over the Fund's *equitable claim* to the settlement

proceeds."[121]  Here, LHC's claims "seek to hold defendants liable for damages in tort" not in

equity.[122]

This case is like *LHC Group, Inc. v. Bayer Corp.*[123] and *New Jersey Carpenters v.*

*Tishman*[124] where there was an independently imposed duty, and the claims were not equitable

---

[115] *Brewster*, 940 A.2d at 937.
[116] *Id.* at 936.
[117] *Id.* at 943; *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).
[118] *Brewster*, 940 A.2d at 936.
[119] *Brewster*, 940 A.2d at 936.
[120] Am. Compl. at 1.
[121] *Brewster*, 940 A.2d at 943 (emphasis added).
[122] Pls.' 12(b)(1) Answering Br. at 10.
[123] *LHC Grp., Inc. v. Bayer Corp.*, 2022 WL 774298, at *2 (N.D. Cal. Mar. 14, 2022) (Noting that even though defendants argued that plaintiffs claims could not exist without the ERISA plan, the court found that the claims were purely state-law tort claims assigned to plaintiffs to enforce on behalf of its plan members.).
[124] *Tishman*, 760 F.3d 297, 301-04 (3d Cir. 2014) (Noting that even though defendants argued that the plaintiffs' cause of action was actually one to collect benefits due, the court found that plaintiffs' cause of action was a state action to recover unpaid wages.).

ones.  Here, the Amended Complaint's claims are not derived from nor are dependent upon ERISA or upon the language of the Plan.  Moreover, because LHC seeks damages in tort and not equity, the Amended Complaint does not implicate the second prong of the *Davila* test and is distinguishable from *Brewster*.   As set forth above, the Court has subject matter jurisdiction.[125] Accordingly, Defendants' Motion to Dismiss under Rule 12(b)(1) should be **DENIED**.

### B.  THE COURT WILL NOT DISMISS THE AMENDED COMPLAINT UNDER CIVIL RULES 12(b)(6) AND 9(b)

The Abbott and Takeda Defendants argue LHC has failed to state a claims under Civil Rule 12(b)(1) and meet the heightened pleading standards of Civil Rule 9(b) and provide notice to the Abbot and Takeda Defendants.[126]  LHC contends that the Amended Complaint and its Exhibit A adequately states a claim and puts the Abbott and Takeda Defendants on notice and that the Amended Complaint contains details sufficient to meet the Civil Rule 9(b) requirements.[127]

Delaware courts have consistently upheld the importance of measuring the sufficiency of pleadings on a case-by-case basis because of the fluid nature of pleading requirements.[128]  This case-by-case analysis occurs "[b]y necessity" because the "analysis [] will differ depending upon the nature of the claim and the factual context in which it is made."[129]

---

[125] The AstraZeneca and Merck Defendants argue, without citation, that even if these claims are not preempted, then the Delaware Court of Chancery has exclusive jurisdiction. (Defs.' 12(b)(1) Opening Br. at 9). Again, because LHC's claims lie in tort and solely seek monetary damages, jurisdiction in Chancery is improper. There is already an adequate remedy at law for LHC in the form of monetary damages. *Mock v. Div. of State Police, Dep't of Safety & Homeland Sec.*, 2022 WL 1744439, at *9 (Del. Ch. May 31, 2022) ("The Court of Chancery's jurisdiction excludes writs and any claim for which there is an adequate remedy at law . . . ."); 10 *Del. C.* § 342 (This Court lacks subject matter jurisdiction where a "sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.").

[126] Defs.' 12(b)(6) Opening Br. at 11.

[127] Pls.' 12(b)(6) Answering Br. at 6.

[128] *In re Benzene Litig.*, 2007 WL 625054, at *6 (Del. Super. Ct. Feb. 26, 2007) ("[T]he general pleading standards set forth above are, by their nature, fluid. Delaware courts consistently have recognized that the sufficiency of a pleading under Rules 8 and 9(b) must be measured according to the particular circumstances of the case."); *see Stuchen v. Duty Free Int'l, Inc.*, 1996 WL 33167249 at *5 (Del. Super. Ct. Apr. 22, 1996).

[129] *In re Benzene Litig.*, 2007 WL 625054, at *6.

This case is a products liability case.[130] In applying the standards for products liability actions under Civil Rule 9(b), the courts have found that it is "incumbent upon the plaintiff to plead 'the nature of the defect, the specific cause of the defect, the duty owed by [the] defendant to [the plaintiff], the breach of the duty by defendant and the damages resulting from the breach.'"[131]

Adopting those standards, the Delaware Superior Court in *In re Benzene Litigation*, denied defendants' motion to dismiss for a Civil Rule 9(b) cause of action finding that plaintiffs had identified the premise at issue and the factual bases for which the liability claims rested.[132] The Court classified the mass tort litigation as a products liability case, regardless if the action was based on negligence, strict liability, or breach of warranty of fitness.[133]

In *Knauer v. Glaxosmithkline, LLC*, the Court found plaintiff's products liability action sufficiently alleged the injury.[134] The Court, under the reasoning of *In re Benzene Litigation*, held that despite the fact that the allegations regarding the specific injury were "arguably vague" it still sufficiently alleged the injury.[135] The Court held that at the early stages of pleading, a plaintiff adequately satisfies the pleading standards even if the plaintiff fails to allege a specific diagnosis or ailment to satisfy the pleading standards.[136]

---

[130] Because the Abbott and Takeda Defendants do not argue specifically which claims of Plaintiffs have failed to establish a well-pled complaint, this Court will evaluate the Motion on the products liability counts. LHC brings a personal injury action based on several counts, three of which are under strict product liability, while also pleading negligence, breach of express warranty and fraud. Am. Compl. ¶¶ 245-448 (Count I – Strict Product Liability, Count II – Strict Product Liability – Design Defect, Count III – Strict Product Liability – Failure to Warn, Count IV – Negligence, Count V – Negligence Per Se, Count VI – Breach of Express Warranty, Count VII – Breach of Implied Warranty, Count VIII – Negligent Misrepresentation, Count IX – Fraud and Fraudulent Misrepresentation, Count X – Fraudulent Concealment, Count XI – Violation of Consumer Protection Laws and Deceptive Trade Practices).
[131] *In re Benzene Litig.,* 2007 WL 625054, at *6 (Del. Super. Ct. Feb. 26, 2007) (quoting *Rinaldi v. Iomega Corp.,* 1999 WL 1442014, at *9 (Del. Super. Ct. Sept. 3, 1999).
[132] *Id*. at *14 (Determining the claim complies with Superior Court Civil Rule 9(b) because "it sufficiently identifies the premises at issue and further identifies factual bases upon which claims of premises liability can rest.").
[133] *Id*. at *6 (Del. Super. Ct. Feb. 26, 2007) (quoting 63 Am. Jur. 2d, Products Liability, § 5).
[134] *Knauer v. Glaxosmithkline, LLC*, 2022 WL 18359403 at *3 (Del. Super. Ct. Dec. 29, 2022).
[135] *Id.*
[136] *Id.*

20

Here, LHC has properly identified the products that caused the alleged harm.[137] Specifically, LHC names "the PPI Products including, but not limited to Dexilant, Nexium, Nexium 24HR, Prevacid, Prevacid 24HR, Prilosec, Prilosec OTC and Protonix."[138] LHC alleges that the label and warnings were "far from adequate" because they did not contain any risk of warning about, among other kidney injuries, Acute Interstitial Nephritis ("AIN").[139]

The Abbott and Takeda Defendants argue that Exhibit A does not sufficiently them on notice.[140] The Abbott and Takeda Defendants contend they have not been adequately put on notice because the exhibit does not contain allegations concerning residence, medical history, treatment details and timeline, injury circumstances, reliance on warnings, or choice of law provision.[141]

The Court finds Exhibit A adequately identifies the defective product because it identifies "the injured party, by name, social security number, and birth date; specifies the nature of the injury by specific diagnosis code; assigns a location to the transaction in which the drug was prescribed; and identifies the defective product by specific NCD number."[142] Time and place is provided.[143] While the lack of specific information requested by the Abbott and Takeda

---

[137] Am. Compl. ¶ 278 (LHC has pled the PPI products were "defective in design or formulation in that they were not merchantable, reasonably suitable and/or safe for their intended and foreseeable use, and their condition when sold was the proximate cause and/or a substantial factor of the injuries sustained by Injured Members.").

[138] *Id*. ¶ 1.

[139] *Id.* ¶ 171-72 ("To this date, Defendants' over-the-counter PPI Products do not include a warning of any risk information about AIN. The current warning contained on prescription PPI products regarding the risk of AIN is far from adequate, lacking the necessary force and specificity to give patients and their healthcare providers the proper information needed to make an informed decision about to start or continue a drug regimen with the potential for such dire consequences. If left untreated, AIN can lead to Chronic Kidney Disease, Renal Failure, Dialysis, Kidney Transplant and/or death.").

[140] Defs.' 12(b)(6) Opening Br at 12.

[141] *Id.*

[142] Pls.' 12(b)(6) Answering Br. at 6.

[143] The AstraZeneca and Merck Defendants seek to distinguish this case from *White v. APP Pharms., LLC*, 2011 WL 2176151 (Del. Super. Apr. 7, 2011) arguing that in *White* each defendant has some reasonable basis upon which it could begin to mount its defense. (Defs.' 12(b)(6) Opening Br at 12 n.9). According to the AstraZeneca and Merck Defendants, there is no reasonable basis upon which it could begin to mount its defense. Not so. LHC has sufficiently pled the injury to have adequately put the AstraZeneca and Merck Defendants on notice. Exhibit A contains gender, state, date first prescribed, date of adverse event, and the PPI product by name.

Defendants may not have been provided, at this stage of the pleading, Exhibit A and the Amended Complaint's other allegations are enough to put the Abbott and Takeda Defendants on notice.[144]

Under the reasoning in *In re Benzene* and *Knauer*, LHC has adequately pled that the PPI products were defective and sufficiently put Defendants on notice of its claims. And "Delaware has a strong public policy favoring resolution of cases on their merits."[145] Here, LHC has adequately pled its claims in the Amended Complaint.

### C. LHC HAS PROPERLY JOINED THE DEFENDANTS UNDER RULE 18.

The Abbott and Takeda Defendants argue that LHC's Amended Complaint improperly joins the distinct claims of dozens on Plan members.[146] The Abbott and Takeda Defendants assert that, under Civil Rules 20 or 23, LHC has failed to satisfy either of the "procedural routes" for joining multiple parties' claims.[147] The Court does not find that Civil Rule 23 applies as this is not appear to be a class action.

The applicable Civil Rule would be Civil Rules 18(a) and/or Rule 20.[148] Civil Rule 18(a) states:

> A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims as the party has against an opposing party.[149]

Civil Rule 20 provides that:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same

---

[144] See *Knauer*, 2022 WL 18359403, at *3 (finding that even though allegations of the specific nature of the injury were vague, plaintiff still adequately pled an injury).

[145] *Waterhouse v. Hollingsworth*, 2013 WL 5803136, at *3 (Del. Super. Ct. Oct. 10, 2013) (citing *Keener v. Isken,* 58 A.3d 407 (Del.2013)).

[146] Defs.' 12(b)(6) Opening Br. at 14.

[147] *Id*. at 14-15.

[148] *River Bank Am. v. Tally-Ho Assocs., L.P.,* 1991 WL 35719, at *7 (Del. Super. Ct. Feb. 22, 1991) ("Superior Court Civil Rules 18(a) and 20(a) permit joinder of claims and parties.").

[149] Del. Super. Ct. Civ. R. 18.

22

transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.[150]

The Abbott and Takeda Defendants claim that LHC "seeks to assert greater rights than its claimants" which is "exactly what subrogation forbids" by employing Civil Rule 18(a).[151] Civil Rule 18(a), however, permits a third-party claim. Here, LHC, as subrogor, is standing in the shoes of the third-party claims. Accordingly, Civil Rule 18(a) is proper as a tool for joinder here.

The Abbott and Takeda Defendants argue that LHC has failed to satisfy the procedural standards of Civil Rule 20 because LHC has not met "the common issues/same transactions joinder requirements."[152] The Court find that common issues/same transactions exist as plead in the Amended Complaint. The Court notes that LHC alleges that plans members have common issues—they all suffer from kidney disease.[153] Moreover, LHC asserts that the injuries are caused from the same source—the PPI products. Accordingly, LHC satisfies the procedural routes of Civil Rule 20.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** the Motions.

August 11, 2023
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress

---

[150] Del. Super. Ct. Civ. R. 20.
[151] Defs.' 12(b)(6) Reply Br. at 10.
[152] Defs.' 12(b)(6) Opening Br. at 14.
[153] *Compare* the issue here *with Tumlinson v. Advanced Micro Devices, Inc.*, 2010 WL 8250792, at *4 (Del. Super. Ct. July 23, 2010) (Finding under Rule 20(a) severance of claims was appropriate because plaintiffs cause of injury was drastically different.). Not so here. Plaintiffs cause of injuries were a result of the PPI products designed, manufactured, and sold by Defendants.

23